Brian W. Zimmerman
State Bar No. 00788746
bzimmerman@spencerfane.com
Nicholas J. Reisch
State Bar No. 24046699
nreisch@spencerfane.com
**SPENCER FANE LLP**
3040 Post Oak Blvd., Suite 1300
Houston, Texas 77056
(713) 552-1234
(713) 963-0859 fax
ATTORNEYS FOR NON-PARTY
NATIONAL INDIVIDUAL
INSURANCE AGENCY, LLC

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| In re: | ) | Chapter 11 Cases |
|---|---|---|
| | ) | |
| AMERICAN WORKERS INSURANCE SERVICES, INC., | ) ) ) | Case No. 19-44208-mxm11 |
| | ) | |
| ASSOCIATION HEALTH CARE MANAGEMENT, INC. | ) ) | Case No. 19-44209-mxm11 |
| | ) | Jointly Administered Under |
| Debtors. | ) | Case No. 19-44208-mxm11 |

DECLARATION OF LANDON JORDAN

1.      My name is Landon Jordan. I am over the age of 18 and I am competent to make this declaration. The facts stated in this declaration are true and correct and are within my personal knowledge as owner of American Workers Insurance Services, Inc. ("AWIS"), Association Health Care Management, Inc. ("AHCM"), and National Individual Insurance Agency, LLC ("NIIA").

2.      Insurety Capital, LLC formerly provided commission advances to the producers that sell insurance policies on behalf of AWIS. Insurety provided the commission advances through a contract with AWIS. AHCM also signed a related contract. The structure of the commission advances is that Insurety would purchase future commissions, and later receive each monthly commission it had purchased along with an additional monthly fee. For example, Insurety would purchase six months of commissions for $30 and then received the $5 commission each month plus a $10.50 fee each month referred to as a health care financing per member per month PMPM. It is each producer that pays this fee with AWIS acting as the go-between, although AWIS is

JORDAN DECLARATION                                                                                                         1

Exhibit 1

contractually responsible for making sure Insurety receives the commissions and additional payments.

3. Beginning in July 2018, Insurety provided millions of dollars in commission advances and timely received all the commissions and additional payments to which it was entitled. Then, despite AWIS and AHCM never breaching the commission advance contracts, Insurety refused to fund further commission advances in July 2019. Insurety then told me it would begin providing commission advances again if I "sold" Insurety a substantial portion of AWIS.

4. Commission advances are a critical part of AWIS's business. They are common in the insurance sales industry. If a company like AWIS cannot ensure that a producer will receive commission advances, those producers will eventually stop selling for it and begin selling for a company that can ensure commission advances.

5. Insurety is familiar with the industry and AWIS in particular and understood that payment of commission advances is critical to retaining producers, particularly the most productive ones. In addition, in conversations with Insurety including Robert Gray, I told them that their refusal to provide commission advances would eventually cause my producers to leave and consequently, harm AWIS's business.

6. When it became clear that Insurety would not provide the commission advances AWIS needed for its business, I contacted James D. Terlizzi, CEO of DRB Financial Solutions, LLC about providing commission advances. The potential deal with DRB advanced to the stage of me actually working on contractual paperwork to enter into an agreement with DRB to provide commission advances. But Mr. Terlizzi then told me that based on information he had received from Insurety that he was not moving forward with providing commission advances to AWIS.

7. Insurety then filed a lawsuit against AWIS and AHCM on August 5, 2019 in Cause No. 2019-53545, *Insurety Capital, LLC v. American Workers Insurance Services, Inc., et al*, in the 215th Judicial District Court of Harris County Texas. On August 7, 2019, Insurety also obtained a temporary restraining order forbidding AWIS and AHCM from obtaining commission advances from anyone else despite refusing to make advances themselves.

8. When I became aware of the lawsuit and temporary restraining order, I contacted Joseph Safina, an owner of Financial Carrier Services, about providing commission advances. I explained the situation with Insurety and AWIS to Mr. Safina and others with Financial Carrier Services. To avoid violating the temporary restraining order, I proposed that they provide commission advances for future insurance policy sales (i.e. commissions not purchased by Insurety) to NIIA.

9. Essentially, I proposed the arrangement with NIIA that is currently in operation with AHCM while it is in bankruptcy. The commission advance deal progressed even farther with Financial Carrier Services than with DRB. Financial Carrier Services decided it wanted to do

JORDAN DECLARATION 2

HOU 3155140.2

contracts directly with the producer groups that would receive the commission advances. Those producer groups did not have any contracts with Insurety.

10. Somehow Insurety found out about the deal with Financial Carrier Services. It filed UCC liens directly against the producer groups, despite having no contract with them. Eventually, Mr. Safina told me that because of the lien filings and information he had received from Insurety, he was declining to provide commission advances for my producers.

11. I have read the affidavit of Mr. Safina dated August 27, 2019 that was apparently obtained by Insurety (Insurety filed it in its lawsuit against AWIS described above). Mr. Safina is incorrect about some details. For example, I did tell Mr. Safina that Insurety's UCC liens against the producer groups were unenforceable, but I did not make any statement regarding Insurety's other liens. I also told Mr. Safina that Insurety had no right to future commissions that it had not purchased. But I did not say anything about the commissions it had purchased. Also, the reason he could not find my ownership of NIIA in public records was because the transaction was not public. Harold "Rusty" Brock, one of my employees and friends, formed NIIA before 2019 and he was publicly listed as the owner. Mr. Brock assigned his ownership of NIIA to Graford Business Management, LLC, a company I own.

12. I have a substantial and reasonable fear about disclosing the identity of NIIA's commission advance provider to Insurety. Insurety has repeatedly gone out of its way to interfere with my efforts to obtain a new advance partner (despite refusing to make advances themselves). I have every reason to believe they are intent upon doing so.

13. Of course, from the perspective of a creditor of AWIS and AHCM, Insurety's interference makes no sense. Having a company willing to provide commission advances through NIIA will maximize Insurety's collection of its purchased commissions and PMPM fees.

14. As explained before, obtaining a commission advance provider is critical to the sustainability of AWIS. If AWIS and AHCM cannot arrange for AWIS's former producers to receive commission advances for future policy sales through NIIA, they will leave and become producers for a competitor. If that happens, the producers are likely to migrate to an unaffiliated competitor and more likely to engage in twisting of the insurance contracts associated with the commissions purchased by Insurety. Further, even aside from twisting, Insurety relies upon the producers receiving additional commissions it has not purchased to pay its PMPM fees. The contract with NIIA puts AHCM in a position to collect those additional commissions and pay them to Insurety. This cannot happen without NIIA. There is no scenario under which AWIS can obtain an advance partner, at least while it is in bankruptcy. I have exhausted my attempts to do so.

15. Further, Insurety's suggestions that there is something nefarious about the NIIA contract with AHCM and that it is possible that someone associated with NIIA is receiving an improper extra benefit is incorrect and does not make any sense. The only reason that the arrangement between NIIA and AHCM is actually possible—to benefit AWIS, AHCM, and their creditors—is

JORDAN DECLARATION 3

HOU 3155140.2

because NIIA is an "insider" and is willing to agree to the contract with AHCM. If our goal were to benefit ourselves at the expense of AWIS and AHCM, it would make more sense to simply liquidate them under a Chapter 7 bankruptcy instead of what we are doing: going out of our way and incurring substantial fees and expenses to reorganize AWIS and AHCM.

16. Moreover, Insurety's suggestion that there is some need to investigate NIIA's negotiations or interactions with its advance partner and other potential advance partners similarly makes no sense. There is no advance partner willing to provide advances to AWIS or to provide advances to NIIA on better terms. And there would be no reason for me not to accept such a deal if it existed because there is no potential extra benefit (improper or otherwise) for me or anyone else associated with NIIA for doing so. I and everyone else affiliated with AWIS, AHCM, and NIIA receive almost the exactly the same benefits of any insurance contract sale whether done by AWIS or NIIA.

17. The only difference between the amounts for new insurance contracts formerly received by AWIS (and its employees and affiliates) for insurance policies and the amounts received by NIIA are the $10 monthly member expense for the additional TPA. The commission advancer provider insisted on a separate TPA to collect and disburse funds. This was a service typically provided by AHCM and still could be but for the advance company's requirements. AHCM still provides other services (e.g. customer support), but does not handle the funds.

18. Thus, there is no source for any different or new supposed payments to NIIA or anyone else associated with it. Insurety is receiving the same amount from each insurance premium payment for past sales as it did under AWIS's operations prior to the bankruptcy. If the situation were otherwise, Insurety would have noticed and informed the Court. Also, as with AWIS's operations prior to bankruptcy, the commissions and PMPM fees associated with commission advances are paid from the producer's commissions, not NIIA's, AWIS's, or AHCM's portion of any funds. Thus, the terms of the commission advance deal do not take any dollars away from NIIA, AWIS, or AHCM.

19. If I and others associated with NIIA were really interested in benefiting ourselves at the expense of AWIS and AHCM, the only effective way to do that would be to operate NIIA entirely independently of AHCM, switch all producers over to NIIA, and arrange for a new TPA other than AHCM. This would allow NIIA to profit $10 per member per month more than the current arrangement. This would most effectively diminish the viability of AWIS and AHCM by depriving AHCM of almost all future revenue, leaving only a portion of revenue for AWIS and AHCM from diminishing commissions for already sold policies.

I verify under penalty of perjury, as provided by 28 U.S.C. § 1746, that the foregoing declaration is true and correct.

*[signature]*
Landon Jordan

**JORDAN DECLARATION** 4

HOU 3155140.2