J. Robert Forshey
State Bar No. 07264200
Laurie Dahl Rea
State Bar No. 00796150
Dylan T.F. Ross
State Bar No. 24104435
FORSHEY & PROSTOK LLP
777 Main St., Suite 1550
Fort Worth, TX  76102
Telephone: 817-877-8855
Facsimile:  817-877-4151
bforshey@forsheyprostok.com
lrea@forsheyprostok.com
dross@forsheyprostok.com

ATTORNEYS FOR DEBTORS
AND DEBTORS-IN-POSSESSION

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Cases |
| | ) | |
| AMERICAN WORKERS INSURANCE SERVICES, INC., | ) ) | Case No. 19-44208-mxm11 |
| | ) | |
| ASSOCIATION HEALTH CARE MANAGEMENT, INC. | ) ) | Case No. 19-44209-mxm11 |
| | ) | |
| Debtors. | ) ) | **Jointly Administered Under Case No. 19-44208-mxm11** |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | _____ |
| | ) | |
| AMERICAN WORKERS INSURANCE SERVICES, INC. and ASSOCIATION HEALTH CARE MANAGEMENT, INC., | ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | |
| | ) | |
| v. | ) ) | **Adversary Proceeding No. 20-_____** |
| | ) | |
| DATA PARTNERSHIP GROUP, LP and THE DATA PARTNERSHIP GROUP, LP BENEFITS PLAN. | ) ) ) | |
| | ) | |
| Defendants. | | |

**COMPLAINT**

## I. PARTIES

1.      The parties to this lawsuit are as follows:

a.      The "Plaintiffs" are American Workers Insurance Services, Inc. ("AWIS") and Association Health Care Management, Inc. ("AHCM" and together with AWIS, the "Plaintiffs" or "Debtors"); and

b.      The "Defendants" are Data Partnership Group, LP ("DPG") and The Data Partnership Group, LP Benefits Plan (the "DPG Plan").

2.      The Defendants may be served with citation pursuant to Bankruptcy Rule 7004 as follows:

a.      By serving any officer or agent able to accept the service of citation at the Defendants' principal office address at 5555 Glenridge Connector, Suite 200, Atlanta, GA 30324; or

b.      By serving the Defendants' registered agent, Jonathan Crumly, at 1600 Parkwood Circle, Suite 200, Atlanta, GA 30339.

c.      A copy of this Complaint will also be served on the Defendants' counsel of record in the bankruptcy cases as follows:

i)      John Rezac and Jonathan Crumly, Taylor English Duma LLP, 1600 Parkwood Circle, Suite 200, Atlanta, GA 30339, jrezac@taylorenglish.com, jcrumly@taylorenglish.com; and

ii)      Christopher Arisco and Joseph Austin, Padfield & Stout LLP, 420 Throckmorton Street, Suite 1210, Fort Worth, Texas 76102, carisco@padfieldstout.com, jaustin@padfieldstout.com.

## II. JURISDICTION

3.      This Court has jurisdiction over this bankruptcy case pursuant to 28 U.S.C. §§157 and 1334(b) and the Standing Order of Reference in the Northern District of Texas.

4.       This adversary proceeding constitutes a "core" proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (C), and (O).  The Court has Constitutional power to enter final orders or judgments in this proceeding.  Further, Plaintiffs consent to the entry of final orders or judgments by this Court if it is determined that consent of the parties is required by this Court to enter final orders or judgments consistent with Article III of the United States Constitution.

5.       The predicates for the relief sought in this complaint are 11 U.S.C. §§ 105(a) and 362(a) and Federal Rule of Bankruptcy Procedure 7001(7) as the Debtors ask the court to extend the automatic stay to non-debtors or to enjoin actions against non-debtors.

6.       Venue is proper before this Court pursuant to 28 U.S.C. §1409(a).

### III.  <u>FACTUAL ALLEGATIONS</u>

#### A.  *The Petition Date and Background*

7.       On October 14, 2019 (the "<u>Petition Date</u>"), the Debtors, both Texas corporations, filed their voluntary cases under chapter 11 of the Bankruptcy Code.  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their business and manage their property as debtors-in-possession.  No creditors' committee has been appointed in this case by the United States Trustee.  Further, no trustee has been requested or appointed in this chapter 11 case.  An examiner has been requested by Insurety Capital, LLC, but the Debtors have opposed that request and the Court has not yet held a hearing or made a ruling on the request.

8.       AWIS and AHCM work together to facilitate the sale and service of health and welfare benefit products issued by insurance carriers and other benefit providers.  AWIS is an insurance agency and marketing entity.  It is responsible for contracting with agents (also referred to as producers) to sell products and for tracking and managing their commissions.  AHCM is a third-party administrator responsible for collecting premiums and other amounts due for the products from the customers (also referred to as members) and remitting them to the parties to whom they are owed.

### B. Employment of Chief Restructuring Officers and Their Indemnity Agreements

9.     The basis of this Complaint is the Defendants' threats against John Tittle, Jr. ("Tittle"), Harris Dickey, LLC ("HD"), William Roberts ("Roberts"), and CR3 Partners, LLC ("CR3"). Tittle, HD, Roberts, and CR3 will be collectively referred to herein as the ("CROs"). The CROs have been employed through orders of this Court, and their engagements include indemnification rights against the Debtors. Accordingly, threats made against the CROs to collect money are tantamount to attempts to collect from the Debtors themselves.

10.     On November 11, 2019, the Debtors filed their *Application for Order (A) Authorizing the Employment and Retention of CR3 Partners, LLC to Provide a Chief Restructuring Officer and Certain Additional Personnel to the Debtors, and (B) Designating William L. Roberts as Chief Restructuring Officer for the Debtors* (the "First CR3 Application"). See, Docket No. 79. The First CR3 Application includes a copy of the CR3 engagement letter, and states as follows:

> The Engagement Letter typically used by CR3 in cases like these contains a broad indemnification provision (the "Indemnity") providing that the Debtors, e.g., agree to indemnify, defend and hold harmless each of Roberts and CR3, its affiliates, agents, members, etc. (the "Indemnified Persons") from all losses, claims, damages, liabilities or expenses and all actions, claims, proceedings and investigations brought or threatened by or on behalf of any person (including the Debtors) arising out of, relating to or in connection with the Engagement Letter or CR3's and Roberts' engagement thereunder (collectively, the "Indemnification Claims"); *provided, however,* that Debtors are not liable for any Indemnification claims finally determined to have resulted from such Indemnified Person's gross negligence or willful misconduct. The indemnity also provides that no Indemnified Person will have liability to the Debtors arising out of or relating to CR3's and Roberts' engagement except to the extent the liability is determined to have resulted from the Indemnified Person's gross negligence or willful misconduct. Finally, the Indemnity provides that, to the extent permitted by law, CR3'sand Roberts' liability with respect to claims by the Debtors shall be limited to the amount of fees actually received by CR3 under the Engagement Letter.

First CR3 Application, para. 36.

11.     On November 13, 2019, the Court entered an order approving the First CR3 Application, including the indemnification provisions. See, Docket No. 90.

12.     After CR3 and Roberts were retained, Roberts developed some retina issues and the treatment options were uncertain. Therefore, on January 10, 2020, the Debtors filed the

*Supplement to the Debtors' Application for Order (A) Authorizing the Employment and Retention of CR3 Partners, LLC to Provide a Chief Restructuring Officer and Certain Additional Personnel to the Debtors, and (B) Designating William L. Roberts as Chief Restructuring Officer for the Debtors* (the "Supplemental CR3 Application"). *See*, Docket No. 140.  In the Supplemental CR3 Application, the Debtors asked the court to approve Brandon Smith with CR3 as the co-CRO. The Debtors decided to add Smith as a co-CRO to allow Roberts the ability to obtain treatment for his retinas, but to allow Roberts to remain in the role of co-CRO to the extent permitted.

13.    The Court entered an order approving the Supplemental CR3 Application on January 24, 2020.  *See*, Docket No. 145.

14.    Brandon Smith later left CR3 in early 2020.  Roberts was able to fulfill all of the CRO functions, so Smith's departure did not have a negative impact.  Nevertheless, Roberts' retina issues continued to be a problem and it became clear that it would be difficult for Roberts to complete the engagement under the circumstances.  Accordingly, the Debtors sought a replacement CRO.

15.    On April 24, 2020, the Debtors filed their *Application for Order (A) Authorizing the Employment and Retention of Harris & Dickey, LLC to Provide a Chief Restructuring Officer and Certain Additional Personnel to the Debtors, and (B) Designating John Tittle, Jr. as Chief Restructuring Officer for the Debtors* (the "HD Application").  *See*, Docket No. 231.  The HD Application and engagement letter contain the same indemnity provision as that used by CR3. HD Application, para. 19.

16.    On May 21, 2020, the Court entered an order approving the HD Application, including its indemnification provisions.  *See*, Docket No. 282.

### C.  Data Partnership Group, LP Claims Against the Debtors

17.    DPG contends that the Debtors owe it money.  Its allegations are set forth in its *Motion for Relief from the Automatic Stay or, Alternatively, for Entry of an Order Compelling Debtors to Assume or Reject Executory Contract* [Dkt. Nos. 192 and 193] (the "Lift Stay Motion").

18.     The Debtors contest DPG's allegations.  The Debtors' objections are generally set forth in its *Objection to Data Partnership Group, L.P.'s Motion for Relief from the Automatic Stay or, Alternatively, for Entry of an Order Compelling Debtors to Assume or Reject Executory Contract* [Dkt. No. 212] (the "Debtors' Objection").

19.     On May 5, 2020, the Court held a status conference on the Lift Stay Motion and the Objection.  As a result of the status conference, DPG and the Debtors (collectively, the "Parties" and each, a "Party") submitted an *Agreed Interim Order Regarding Data Partnership Group, L.P.'s Motion for Relief from the Automatic Stay, or, in the Alternative, for Entry of an Order Compelling Debtors to Assume or Reject Executory Contract* [Docket No. 247] (the "Agreed Interim Order").  Pursuant to the Agreed Interim Order, "with respect to the matters raised in the [Lift Stay Motion], the automatic stay shall continue in effect pending the conclusion of, or as a result of, a final hearing and determination under 11 U.S.C. § 362(d) or further order of the Court."

20.     The Lift Stay Motion and the Debtors' Objection are scheduled for hearing on August 17, 2020.  Accordingly, the Court has not adjudicated the issues in the Lift Stay Motion and the Debtors' Objection.

### D.  Data Partnership Group, LP Claims Against the CROs

21.     DPG has now threatened CROs.  On July 6, 2020, DPG sent demand letters to the Debtors' former CRO, Bill Roberts, and to the Debtors' current CRO, John Tittle, threatening them with liability based on allegations made by DPG in its Lift Stay Motion (the "DPG CRO Claims").  Copies of those letters are attached as **Exhibit A** and **Exhibit B**.  The Debtors have also addressed the DPG CRO Claims in their Supplement to the Stay Enforcement Motion filed on July 20, 2020.  *See*, Docket No. 318 in the main case.

22.     Any accusation by DPG that either Roberts or Tittle are liable for anything is far-fetched.  The letters were sent to harass the Debtors by making their CROs feel personal insecurity for actions taken by the Debtors at a time when the Debtors need their CRO focused on the business of these Debtors and the administration of these bankruptcy cases.

23.     Furthermore, any actions taken or decisions made by the Debtors with respect to paying DPG have been based on reasonable legal disputes with DPG that have not yet been adjudicated by this Court.  The Debtors' legal arguments disputing DPG's claims are set forth in (a) the Debtors' Objection at Docket No. 212 in the main case, (b) the Stay Enforcement Motion at Docket No. 307 in the main case, and (c) the Supplement to the Stay Enforcement Motion at Docket No. 318 in the main case.  The Debtors hereby incorporate all of the allegations and arguments in the foregoing pleadings.

24.     Because of the contractual indemnification rights Roberts and Tittle have against the estate, the demands by DPG against Roberts and Tittle are effectively claims against the Debtors and their property.  As such, the July 6, 2020 letters are also violations of the automatic stay.

25.     By this Complaint, the Debtors seek extension of the stay of 11 U.S.C. § 362 pursuant to equitable power of this Court under 11 U.S.C. § 105 to DPG's threats to act against the CROs.  Alternatively, the Debtors seek a preliminary and permanent injunction against DPG enjoining DPG from proceeding with actions against the CROs.

## COUNT ONE: REQUEST FOR EXTENSION OF THE AUTOMATIC STAY

26.     Plaintiff hereby reasserts the allegations in paragraphs 1 through 21 above.

27.     Because of the CROs' contractual rights to seek indemnity from the Debtors, there is such identity between the Debtors and the CROs that the Debtors are the real party against whom DPG's claims have been made.

28.     The CROs' engagement letters and the indemnity agreements provided therein are a formal and contractual tie between the CROs and the Debtors that create an identity of interests between the Debtors and the CROs.

29.     In the event the CROs are found liable for the CRO DPG Claims, such liability will be a liability of the Debtors.

30.     Based on the identity of interests between the CROs and the Debtors with respect to the DPG CRO Claims, the automatic stay should be extended to CROs and any action by DPG to pursue the DPG CRO Claims should be stayed.  For this and the foregoing reasons, ample cause exists for this Court to exercise its power under 11 U.S.C. §§ 105(a) and 362(a) to extend the automatic stay to prohibit further claims by DPG against the CROs.

### **COUNT TWO: PRELIMINARY AND PERMANENT INJUNCTION.**

31.     Plaintiff hereby reasserts the allegations in paragraphs 1 through 30 above.

#### A.  *Standard for Injunction*

32.     The traditional standards governing preliminary injunctions under Fed. R. Civ. P. 65 are applicable to an injunction under section 105 so that the Court must consider: (a) the likelihood of success on the merits; (b) whether an injunction will save the movant from irreparable injury; (c) whether an injunction would harm others; and (d) whether public interest would be served by an injunction.

#### B.  *Likelihood of Success on the Merits*

33.     Here, the likelihood of success on the merits is great.  To prevail on the DPG CRO Claims, DPG must prove the following: (a) the Agentra Plans are proper ERISA employee welfare benefit plans; (b) the Debtors' customers are, in fact, limited partners of DPG; (c) the terms of any contractual obligations the Debtors owe to DPG; (d) the Debtors did, in fact, withhold funds from DPG that they owe to DPG or otherwise fail in some duty or obligation to DPG; (e) the agreement reached by the Debtors and DPG in the Cash Collateral Order is unambiguous and capable of being implemented as worded; (f) the CROs supervised the Debtors with respect to the Agentra Products and any obligations the Debtors to DPG or that they managed the alleged ERISA plan assets; (g) a claim against the CROs is not a claim against the Debtors; and (h)  DPG has standing to pursue a fiduciary duty claim against the CROs.  The Plaintiffs do not believe that DPG can meet its burden on any of these issues.

34.     First, the DPG benefit plan is not likely a proper ERISA employee welfare benefit plan.  DPG (or its affiliates) sent a request to the Department of Labor (DOL) during early 2019 seeking an advisory opinion that DPG's alleged ERISA plan was in fact a legal, valid plan.  On January 24, 2020, the DOL provided a response in which the DOL opined that DPG's plan did not constitute a proper, valid ERISA plan.  Some months prior to the DOL's response, DPG commenced a lawsuit against the DOL (through the Secretary of Labor) seeking a declaratory judgement that the ERISA plan was proper and valid.  This lawsuit is pending in the Fort Worth Division before Judge O'Connor as Case No. 4:19-cv-00800-O.  DPG moved for summary judgment, and the DOL has filed a cross motion for summary judgment.  Judge O'Connor entered a scheduling order for the submission of briefs on the motions for summary judgment.  The final briefing was due on April 6, 2020, so that the cross motions are now ripe for submission to Judge O'Connor.

35.     DPG asserts that its alleged partners are eligible to participate in the ERISA plan because they have agreed to share electronic data with DPA.  The DOL asserts that DPG's limited partners, did not perform any work or services for DPG and therefore did not qualify as "working owners" or "employees" or bona fide partners" qualified to be ERISA plan participants.  As evidenced by the DOL's arguments and authorities in its Brief, there is a significant issue as to whether the customers who own the Agentra Products are even eligible to lawfully participate in DPG's alleged ERISA plan.  If so, then the DPG plan violates federal law, will not support DPG's asserted rights in relation to the Agentra Products, and may be an illegal contract that is void under Texas law.  If DPG has any enforceable rights against anyone in relation to the Agentra Products, those rights all stem directly from DPG's sponsorship of a plan that potentially violates ERISA.  If the ERISA plan is in fact found to violate federal law, then this illegality will bar DPG from any relief in relation the Agentra Products based on the ERISA plan.

36.     Second, DPG admits that to be a participant in an ERISA employee welfare benefit plan, a person must be a limited partner of DPG.  DPG has produced to the Debtors copies of the

limited partnership agreements between it and persons it alleges are participants and limited partners. DPG produced about 7,500 agreements.  The Debtors compared them to its 2,664 members who have the products at issue here.  There were two (2) matches.  Even as to those matches, DPG did not sign the agreements and the customers' signatures were electronically affixed.  It is not clear that they are agreements at all or what the customers had agreed to by their electronic signatures.  Moreover, DPG produced its most recent partnership agreement, which refers to the list of limited partners on an attached roster.  There are no names on that roster.  Accordingly, there are no limited partners, thus there are no parties entitled to be participants of the alleged ERISA welfare benefit plans.

37.     Third, there is no contract between the Debtors and DPG. DPG contracted with Agentra, but that contract was back dated and was not actually signed until after the Petition Date. Likewise, there is no evidence of the terms of any subcontract—written or unwritten—between the Debtors and Agentra under which the Debtors agreed to take on Agentra's contractual obligations to DPG.

38.     Fourth, without a contract or subcontract with the Debtors, and given the potential unenforceability of DPG's claim due to illegality, DPG will have difficulty proving what, if anything, the Debtors owe to DPG.  If the Debtors owe nothing to DPG, the CROs could not have had any part in withholding funds meant for DPG.

39.     Fifth, that the agreement reached by the Debtors and DPG in the Cash Collateral Order is ambiguous and cannot be enforced as written.  In subsequent discussions with DPG, DPG has admitted that there are no carrier premiums in connection with the Agentra Products.

40.     Sixth, the CROs did not supervise the Debtors with respect to the Agentra Products or manage alleged ERISA plan assets.  The CROs have been working with the Debtors and DPG to resolve and monitor these issues, but they don't have control over how funds are used.

41.     Seventh, the effect of the CROs rights to indemnity, approved as part of the CROs' employment in these cases, is that a claim against the CROs is a claim against the Debtors and should be adjudicated and paid (or not paid) as such.

42.     Finally, generally causes of action for breach of fiduciary duty against officers of the debtor belong to the bankruptcy estate.  DPG has no standing to pursue fiduciary duty claims against the CROs.

### C.  Irreparable Injury

43.     Absent the requested preliminary and permanent injunctive relief requested herein, the Debtors and the CROs will suffer irreparable injury.  Obviously, DPG's assertion of the DPG CRO Claims causes great personal stress to the CROs.   The threats of action are unwarranted and smack of harassment.  Additionally, defending the DPG CRO Claims will distract them from their work for these bankruptcy estates and their creditors and puts them at odds with the Debtors.  DPG's actions also hurt the Debtors and their creditors by distracting the CROs from their obligations to these bankruptcy estates.

### D.  Impact of Injunction on Others

44.     Imposition of the injunctive relief requested herein will only minimally affect the interests of DPG, if at all.  If DPG has claims, it can pursue them against the Debtors.  In fact, it is pursuing those claims against the Debtors.  It filed proofs of claim and it has filed the Lift Stay Motion.  The injury to the CROs far outweighs any harm that may be experienced by DPG as a result of the requested injunctive relief.

### E.  Public Interest

45.     Public interest would be well served by issuance of the requested injunctive relief. If creditors are permitted to sue court-employed restructuring officers, debtors will be hard-pressed to find qualified professionals willing to act in the role of CRO.  Permitting creditors to circumvent the Court's adjudication of their rights and claims against the Debtors by personally

attacking court-employed bankruptcy professionals for the same claim is not helpful to the reorganization process.

### F. Conclusion

46.    The Plaintiffs will meet their burden with respect to all four prongs necessary for injunctive relief.  This Court should enter a preliminary and permanent injunction prohibiting DPG from pursuing the DPG CRO Claims against the CROs.

### VIII.  <u>PRAYER</u>

For the reasons set forth above, Plaintiffs requests that the Court enter orders and judgments granting the relief requested herein, and all such relief to which the Debtors may be justly entitled.

Dated: July 23, 2020.                         Respectfully submitted,

/s/ *J. Robert Forshey*
J. Robert Forshey
State Bar No. 07264200
Laurie Dahl Rea
State Bar No. 00796150
Dylan T.F. Ross
State Bar No. 24104435
FORSHEY & PROSTOK LLP
777 Main St., Suite 1550
Fort Worth, TX  76102
Telephone: 817-877-8855
Facsimile:   817-877-4151
bforshey@forsheyprostok.com
lrea@forsheyprostok.com
dross@forsheyprostok.com

ATTORNEYS FOR DEBTORS
AND DEBTORS-IN-POSSESSION

L:\BFORSHEY\American Workers Insurance  (Assc Health Care) #6050\Pleadings 19-44208-mxm11\Complaint Against DPG 7.23.20.docx

# Exhibit A

**taylor | english**    **Taylor English Duma LLP** 1600 Parkwood Circle, Suite 200, Atlanta, Georgia 30339
Main: 770.434.6868 Fax: 770.434.7376 taylorenglish.com

Jonathan D. Crumly
Direct Dial: 678.426.4659
jcrumly@taylorenglish.com

July 6, 2020

*Via Email to Bill.Roberts@cr3partners.com*
Bill Roberts
CR3 Partners
13355 Noel Road, Suite 2005
Dallas, TX 75240

RE:     *In re American Workers Insurance Services, Inc.*
*In Re Association Health Care Management, Inc.*
Chapter 11 Bankruptcy Case Number 19-44208-mxm11 (*jointly administered*)

Dear Mr. Roberts:

We write again on behalf of Data Partnership Group, LP ("DPG") and the Data Partnership Group, LP Benefits Plan (the "Plan"). As you know, DPG established and sponsors a single-employer self-insured health plan which is an "employee welfare benefit plan" as defined under section 3(1) of the Employee Retirement Income Security Act ("ERISA"). You served as a court approved Chief Restructuring Officer for American Workers Insurance Services, Inc. ("AWIS") in the above bankruptcy matters until April 20, 2020. In that role, you supervised AWIS' activities relating to assets of the Plan. While you served as CRO, AWIS failed to properly transmit Plan assets to the Plan Trustee, failed to disclose the amount of its fees charged to the Plan, comingled Plan assets with other AWIS assets, and otherwise actively interfered with the proper administration of Plan assets. As of the date of this letter, AWIS has failed and refused to transmit over $2,700,000 in Plan assets to Hawaii Mainland Associates, LLC, the Plan Trustee and Third Party Administrator, despite the December 2019 payment agreement reached in resolution of DPG's objection to AWIS' Cash Collateral Motion.

Under ERISA, any individual or entity engaged in discretionary management of Plan assets becomes a fiduciary of the Plan which gives rise to fiduciary responsibility to the Plan, its participants, and Plan assets. See 29 U.S.C. § 1105(a). All fiduciaries are "personally liable to make good to such plan any losses to the plan resulting" from a breach of fiduciary duty. 29 U.S.C. § 1109(a). Under ERISA, fiduciaries are liable to the Plan if they knew or should have known that a fee arrangement is unreasonable. 29 U.S.C. § 1106. Finally, commingling of a service provider's own funds with that of an ERISA plan is evidence of self-dealing and a breach of fiduciary duty. See e.g., *Pipefitters Local 636 Insurance Fund v. Blue Cross Blue Shield of Michigan*, 722 F. 3d 861 (6th Cir. 2013).

DPG is currently determining the full scope of AWIS' mismanagement of Plan assets. This will include all damages flowing from such mismanagement arising between the date of your appointment as CRO and April 20, 2020. DPG will pursue all available claims for breach of fiduciary duty against individual fiduciaries to the fullest extent allowed under ERISA and other laws. Given that you acted as an officer of AWIS and fiduciary of the Plan during a period of commingling and mismanagement of Plan assets by AWIS, claims against you may be asserted. Demand is hereby made that you notify your professional liability carrier of these potential claims. Further, demand is made for a copy of your professional liability policy in force during the period you served as CRO to AWIS.

Bill Roberts
July 6, 2020
Page 2

If you have retained counsel to represent you in matters arising from your service as CRO of AWIS, please forward this letter to your counsel.

Sincerely,

Jonathan Crumly

cc:    Data Partnership Group, LP
J. Robert Forshey, Esq. (bforshey@forsheyprostok.com)
Laurie Rea, Esq. (lrea@forsheyprostok.com)
Joseph Austin (jaustin@padfieldstout.com)
John Rezac, Esq. (jrezac@taylorenglish.com)

# Exhibit B

taylor | english

**Taylor English Duma LLP** 1600 Parkwood Circle, Suite 200, Atlanta, Georgia 30339
Main: 770.434.6868 Fax: 770.434.7376 taylorenglish.com

Jonathan D. Crumly
Direct Dial: 678.426.4659
jcrumly@taylorenglish.com

July 6, 2020

***Via Email to*** *john@harris-dickey.com*
John Tittle, Jr.
Harris and Dickey, LLC
4127 Wycliff Avenue
Dallas, TX 75219

> RE:   *In re American Workers Insurance Services, Inc.*
>        *In Re Association Health Care Management, Inc.*
>        Chapter 11 Bankruptcy Case Number 19-44208-mxm11 (*jointly administered*)

Dear Mr. Tittle:

We write on behalf of Data Partnership Group, LP ("DPG") and the Data Partnership Group, LP Benefits Plan (the "Plan"). As you know, DPG established and sponsors a single-employer self-insured health plan which is an "employee welfare benefit plan" as defined under section 3(1) of the Employee Retirement Income Security Act ("ERISA"). You currently serve as a court approved Chief Restructuring Officer for American Workers Insurance Services, Inc. ("AWIS") in the above bankruptcy matters as of April 20, 2020. In that role, you supervise AWIS' activities relating to assets of the Plan. From the date you were appointed CRO, AWIS has failed to properly transmit Plan assets to the Plan Trustee, failed to disclose the amount of its fees charged to the Plan, comingled Plan assets with other AWIS assets, and otherwise actively interfered with the proper administration of Plan assets. As of the date of this letter, AWIS has failed and refused to transmit over $2,700,000 in Plan assets to Hawaii Mainland Associates, LLC, the Plan Trustee and Third Party Administrator, despite the December 2019 payment agreement reached in resolution of DPG's objection to AWIS' Cash Collateral Motion.

Under ERISA, any individual or entity engaged in discretionary management of Plan assets becomes a fiduciary of the Plan which gives rise to fiduciary responsibility to the Plan, its participants, and Plan assets. See 29 U.S.C. § 1105(a). All fiduciaries are "personally liable to make good to such plan any losses to the plan resulting" from a breach of fiduciary duty. 29 U.S.C. § 1109(a). Under ERISA, fiduciaries are liable to the Plan if they knew or should have known that a fee arrangement is unreasonable. 29 U.S.C. § 1106. Finally, commingling of a service provider's own funds with that of an ERISA plan is evidence of self-dealing and a breach of fiduciary duty. See e.g., *Pipefitters Local 636 Insurance Fund v. Blue Cross Blue Shield of Michigan*, 722 F. 3d 861 (6th Cir. 2013).

DPG is currently determining the full scope of AWIS' mismanagement of Plan assets. This will include all damages flowing from such mismanagement arising on and after the date of your appointment as CRO. DPG will pursue all available claims for breach of fiduciary duty against individual fiduciaries to the fullest extent allowed under ERISA and other laws. Given that you act as an officer of AWIS and fiduciary of the Plan during a period of commingling and mismanagement of Plan assets by AWIS, claims against you may be asserted. Demand is hereby made that you notify your professional liability carrier of these potential claims. Further, demand is made for a copy of your professional liability policy in force as of April 20, 2020.

John Tittle, Jr.
July 6, 2020
Page 2

      If you have retained counsel to represent you in matters arising from your service as CRO of AWIS, please forward this letter to your counsel.

           Sincerely,

           Jonathan Crumly

cc:    Data Partnership Group, LP
      J. Robert Forshey, Esq. (bforshey@forsheyprostok.com)
      Laurie Rea, Esq. (lrea@forsheyprostok.com)
      Joseph Austin (jaustin@padfieldstout.com)
      John Rezac, Esq. (jrezac@taylorenglish.com)