B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS  AMERICAN WORKERS INSURANCE SERVICES, INC. AND ASSOCIATION HEALTH CARE MANAGEMENT, INC. | DEFENDANTS<br>DAVID LINDSEY AND LIBE K. HODAK |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>FORSHEY & PROSTOK, L.L.P.<br>777 Main Street, Suite 1550 Fort Worth, Texas 76102<br>Phone: (817) 877-8855 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>X Debtor  □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor  □ Other<br>□ Trustee | **PARTY** (Check One Box Only)<br>□ Debtor  □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor  X Other<br>□ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

**11 U.S.C. §§ 548(a)(1)(B) and 550: Preferential Transfers, Fraudulent Transfer and Recovery**

**11 U.S.C. § 502(d) and (j) Objection to Defendant's claim**

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- □ 11-Recovery of money/property - §542 turnover of property
- □ 12-Recovery of money/property - §547 preference
- [1] 13-Recovery of money/property - §548 fraudulent transfer
- [2] 14-Recovery of money/property - other
   § 550 Recovery of Value of Avoided Transfers

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- □ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- □ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- □ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- □ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- □ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- □ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- □ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
- □ 61-Dischargeability - §523(a)(5), domestic support
- □ 68-Dischargeability - §523(a)(6), willful and malicious injury
- □ 63-Dischargeability - §523(a)(8), student loan
- □ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- □ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- □ 71-Injunctive relief – imposition of stay
- □ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- □ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- □ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- □ 01-Determination of removed claim or cause

**Other**
- □ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
- [3] 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case) **§ 502(d) and (j)**

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $ **$2,056,250.02** |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR **American Workers Insurance Services, Inc. & Association Health Care Management , Inc.** | BANKRUPTCY CASE NO. **19-44208-MXM-11 Jointly Administered** | | |
| DISTRICT IN WHICH CASE IS PENDING **NORTHERN** | DIVISION OFFICE **FORT WORTH** | | NAME OF JUDGE **MARK X. MULLIN** |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) **/s/ J Robert Forshey** | | | |
| DATE **10/14/2021** | PRINT NAME OF ATTORNEY (OR PLAINTIFF) **J. Robert Forshey** | | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

J. Robert Forshey
State Bar No. 07264200
Laurie Dahl Rea
State Bar No. 00796150
Dylan T.F. Ross
State Bar No. 24104435
FORSHEY & PROSTOK LLP
777 Main St., Suite 1550
Fort Worth, TX  76102
Telephone: 817-877-8855
Facsimile:   817-877-4151
bforshey@forsheyprostok.com
lrea@forsheyprostok.com
dross@forsheyprostok.com

ATTORNEYS FOR DEBTORS
AND DEBTORS-IN-POSSESSION

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Cases |
| | ) | |
| AMERICAN WORKERS INSURANCE SERVICES, INC., | ) ) | Case No. 19-44208-mxm11 |
| | ) | |
| ASSOCIATION HEALTH CARE MANAGEMENT, INC. | ) ) | Case No. 19-44209-mxm11 |
| | ) | **Jointly Administered Under** |
| Debtors. | ) | **Case No. 19-44208-mxm11** |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| AMERICAN WORKERS INSURANCE SERVICES, INC. and | ) ) | |
| | ) | |
| ASSOCIATION HEALTH CARE MANAGEMENT, INC., | ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | **Adversary Proceeding No. 20-_____** |
| | ) | |
| DAVID LINDSEY and LIBE K. HODAK, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**<u>COMPLAINT TO AVOID AND RECOVER TRANSFERS PRUSUANT TO 11 U.S.C. §§ 548
AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502</u>**

Plaintiffs American Workers Insurance Services, Inc. ("<u>AWIS</u>") and Association Health Care Management, Inc. ("<u>AHCM,</u>" and collectively with AWIS, "<u>Plaintiffs</u>" or "<u>Debtors</u>"), debtors in the above captioned jointly administered Chapter 11 cases, hereby file this *Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 548 and 550 and to Disallow Claims Pursuant to 11 U.S.C. § 502* ("<u>Complaint</u>") against David Lindsey and Libe K. Hodak (collectively, "<u>Defendants</u>"), and in support thereof, Plaintiffs allege as follows:

## I.   <u>NATURE OF THE CASE</u>

1.      Plaintiffs seek to avoid and recover from Defendants, or any other person or entity for whose benefit transfers were made, pursuant to Sections 548 and 550 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), certain prepetition transfers of funds made by Plaintiffs to the Defendants that may constitute fraudulent conveyances.

2.      In addition, to the extent necessary, Plaintiffs seek to disallow, pursuant to Sections 502(d) and (j) of the Bankruptcy Code, any claim that Defendants have filed or asserted against Plaintiffs' bankruptcy estates.  Plaintiffs do not waive and hereby reserves all rights to object to any such claim for any reason, including, but not limited to, any reason set forth in Sections 502(a) through (j) of the Bankruptcy Code.

## II.  <u>PARTIES</u>

3.      Plaintiffs, both Texas corporations, commenced the above captioned voluntary Chapter 11 bankruptcy cases on October 14, 2019.  Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, Plaintiffs continue to operate their business and manage their property as debtors-in-possession.

4.      Upon information and belief, Defendant David Lindsey is a Texas resident with a principal place of business located at 4201 Spring Valley, Suite 1500, Dallas, Texas 75244, and a residential address of 3914 Normandy Avenue, Dallas, Texas 75205.

5.      Upon information and belief, Defendant Libe K. Hodak is a Texas resident and wife of David Lindsey.  Upon information and belief, Libe K. Hodak resides at 3914 Normandy Avenue, Dallas, Texas 75205.

### III.  JURISDICTION

6.      This Court has jurisdiction over Plaintiffs' bankruptcy cases pursuant to 28 U.S.C. §§ 157 and 1334(b) and the Standing Order of Reference in the Northern District of Texas.

7.      This adversary proceeding constitutes a "core" proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (H), and (O).   The Court has Constitutional power to enter final orders or judgments in this proceeding.  Further, Plaintiffs consent to the entry of final orders or judgments by this Court if it is determined that consent of the parties is required by this Court to enter final orders or judgments consistent with Article III of the United States Constitution.

8.      The predicates for the relief sought in this complaint are 11 U.S.C. §§ 105(a), 548(a), 550, and 502, and Federal Rule of Bankruptcy Procedure 7001(1).

9.      Venue is proper before this Court pursuant to 28 U.S.C. § 1409(a).

### IV.  FACTUAL ALLEGATIONS

#### A.  General Background.

10.      On October 14, 2019 (the "Petition Date"), AHCM and AWIS filed voluntary cases under Chapter 11 of the Bankruptcy Code.  Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their business and manage their property as debtors-in-possession.  No creditors' committee has been appointed in the Debtors' cases by the United States Trustee.  Further, no trustee has been requested or appointed in these chapter 11 cases.[1]

11.      AWIS and AHCM work together to facilitate the sale and service of health and welfare benefit products issued by insurance carriers and other benefit providers.  AWIS is an

---

[1] An examiner has been requested by Insurety Capital, LLC, but the Debtors have opposed that request. The Court has not ruled on the request and no hearing on the request has been set.

insurance agency and marketing entity.  It is responsible for contracting with agents (also referred to as producers) to sell products and for tracking and managing their commissions. AHCM is a third-party administrator responsible for collecting premiums and other amounts due for the products from the customers (also referred to as members) and remitting them to the parties to whom they are owed.

### B. Prepetition Transaction Involving the Sale of Equity Interest in the Debtors' Parent Entity.

12.      The Debtors are wholly owned subsidiaries of AHCM Holdings, LLC ("AHCM Holdings"), a Texas limited liability company.   AHCM Holdings is not a debtor under the Bankruptcy Code.

13.      Prior to January 18, 2019, Lindsey Healthcare Holdings LLC ("LHH") was the owner and holder of 100% membership interest in AHCM Holdings ("Membership Interest"). Upon information and belief, David Lindsey is the manager and an owner of LHH.

14.      On or about January 18, 2019, LHH entered into that certain Member Interest Purchase Agreement (the "MIPA")[2] with Rendon Management Group LLC ("Rendon").  Pursuant to the MIPA, Rendon acquired the Membership Interest from LHH.  Rendon is owned by Landon Jordan.

15.      The purchase price of the Membership Interest was $8,650,000 (the "Purchase Price").[3]  Pursuant to the MIPA, the Purchase Price was to be paid by Rendon as follows:  (1) by three cash payments consisting of: (a) $1,300,000 due upon execution of the MIPA, (b) $1,250,000 due on or before June 1, 2019, and (c) $1,250,000 due within 120 days of June 1, 2019;[4] and (2)  the remaining $4,850,000 was to be paid pursuant to the terms of that certain Promissory Note dated January 18, 2019 (the "Note"),[5] in the principal amount of $4,850,000,

---

[2] A true and correct copy of the MIPA is attached hereto as **Exhibit A**.
[3] *See* MIPA, Art. II, Sec. 2.02.
[4] *Id.* at Sec. 2.03 and 2.05.
[5] A true and correct copy of the Note is attached hereto as **Exhibit B**.

COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 548 AND 550 AND TO
DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502                                                                PAGE - 4

made by Rendon for the benefit of LHH.  The Note called for twenty-four (24) equal monthly payments of $202,083.34 commencing March 31, 2019.  The Maturity Date of the Note was February 2, 2021.  All outstanding principal and unpaid accrued interest were to be due and payable on the Maturity Date.

16.     Rendon is the sole obligor under the MIPA and the Note.  The Debtors are not parties to the MIPA or the Note.  The Debtors also do not otherwise owe any debt to Defendants or LHH.

### C. Prepetition Transfers to Defendants.

17.     Plaintiffs have reviewed their books and records and determined that within a year prior to the Petition Date, six (6) separate payments were made to the Defendants aggregating $2,056,251 (collectively, the "Transfers").

18.     The details of each of the Transfers are set forth on **Exhibit C**, attached hereto and incorporated herein by this reference.  The Transfers were made by wire transfer and identified by the date of the wire transfer, name of the transferee bank and the last four digits of the bank account where funds wire were sent, the wire number, and the amount transferred.

19.     Plaintiffs owe no debt to either of the Defendants and have not transacted any business with Defendants.  Plaintiffs also owe no debt to LHH and have not transacted any business with LHH.

20.     Plaintiffs assert that the Transfers were made by Plaintiffs on account of the debt owed by Rendon to LHH pursuant to the MIPA and the Note.  The Transfers were wired to David Lindsey because, upon information and belief, David Lindsey is the manager and owner of LHH. Plaintiffs received no value in exchange for the Transfers.

21.     Plaintiffs assert that as of February 2019, the sum of their debts was greater than the fair value of their property, and thus Plaintiffs were insolvent, as the term "insolvency" is defined under Section 101(32) of the Bankruptcy Code, as of February 2019.

## V.  CLAIMS FOR RELIEF

### COUNT ONE: AVOIDANCE OF FRAUDULENT CONVEYANCES – 11 U.S.C. § 548(a)(1)(B)

22.     Plaintiffs hereby reassert the allegations in paragraphs 1 through 21 above.

23.     Within a year prior to the Petition Date, the Debtors made the Transfers for the benefit of Defendants in an aggregate amount no less than $2,056,251.

24.     The Transfers were transfers by Debtors of interests in their property.

25.     The Debtors received no value or less than reasonably equivalent value in exchange for the Transfers.

26.     The Debtors were insolvent, or became insolvent, on each of the days the Transfers were made.

27.     The Debtors are entitled to judgment avoiding the Transfers under Section 548(a)(1)(B) of the Bankruptcy Code.

### COUNT TWO: RECOVERY OF VALUE OF AVOIDED TRANSFERS – 11 U.S.C. § 550

28.     Plaintiffs hereby reassert the allegations in paragraphs 1 through 27 above.

29.     Plaintiffs are entitled to avoid the Transfers pursuant to 11 U.S.C. § 548.

30.     Defendants were the initial transferees of the Transfers or the immediate or mediate transferees of such initial transferee or the person for whose benefit the Transfers were made.

31.     Pursuant to 11 U.S.C. § 550(a), Plaintiffs are entitled to recover from Defendants the Transfers, plus interest thereon to the date of payment and the costs of this action.

### COUNT THREE:  DISALLOWANCE OF ALL CLAIMS – 11 U.S.C. § 502(d) AND (j)

32.     Plaintiffs hereby reassert the allegations in paragraphs 1 through 32 above.

33.     Defendants are the transferees of transfers avoidable under Section 548 of the Bankruptcy Code, which property is recoverable under Section 550 of the Bankruptcy Code.

34.     Defendants have not paid to Plaintiffs the amount of the Transfers for which Defendants are liable under 11 U.S.C. § 550.

35.     While Defendants have not filed any proofs of claim, nor are Defendants scheduled with any claims, to the extent applicable, pursuant to Section 502(d) of the Bankruptcy Code, any and all claims of the Defendants, or their assignees, against Debtors' Chapter 11 estates must be disallowed until such time as Defendants pay to Plaintiffs the amount equal to the aggregate amount of the Transfers, plus interest thereon and costs.

36.     While Defendants have not filed any proofs of claim, nor are Defendants scheduled with any claims, to the extent applicable, pursuant to Section 502(j) of the Bankruptcy Code, any and all claims of Defendants, and/or their assignees, against the Debtors' Chapter 11 cases previously allowed must be reconsidered and disallowed until such time as Defendants pay to Plaintiffs an amount equal to the aggregate amount of the Transfers, plus interest thereon and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request this Court to enter judgment as follows:

A.     On Count One, that all of the Transfers made, as set forth in **Exhibit C**, are avoided under 11 U.S.C. § 548(a)(1)(B);

B.     On Count Two, that Defendants are directed to return to Plaintiffs the amount of the Transfers under 11 U.S.C. § 550, plus interest from the date of the demand, together with the costs and expenses of this action;

C.     On Count Three, that any claim filed or otherwise held by Defendants and/or their assignees against the Debtors are disallowed until Defendants return the Transfers to Plaintiffs pursuant to 11 U.S.C. § 502(d) and (j); and

D.     Granting Plaintiffs such other and further relief as this Court may deem just and proper.

Dated: October 14, 2021.          Respectfully submitted,

/s/ *J. Robert Forshey*
J. Robert Forshey
State Bar No. 07264200
Laurie Dahl Rea
State Bar No. 00796150
Dylan T.F. Ross
State Bar No. 24104435
FORSHEY & PROSTOK LLP
777 Main St., Suite 1550
Fort Worth, TX  76102
Telephone: 817-877-8855
Facsimile:   817-877-4151
bforshey@forsheyprostok.com
lrea@forsheyprostok.com
dross@forsheyprostok.com

ATTORNEYS FOR DEBTORS
AND DEBTORS-IN-POSSESSION

# EXHIBIT A

# MEMBERSHIP INTEREST PURCHASE AGREEMENT

This Membership Interest Purchase Agreement (this "**Agreement**"), dated effective as of January 18, 2019, is entered into between Lindsey Healthcare Holdings LLC, a Texas limited liability company ("**Seller**") and Rendon Management Group LLC, a Texas limited liability company ("**Buyer**").

## RECITALS

WHEREAS, Seller owns 100% of the issued and outstanding membership interests (the "**Membership Interests**"), in AHCM Holdings LLC, a Texas limited liability company (the "**Company**");

WHEREAS, Seller wishes to sell to Buyer, and Buyer wishes to purchase from Seller, the Membership Interests, subject to the terms and conditions set forth herein; and

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
## DEFINITIONS

The following terms have the meanings specified or referred to in this ARTICLE I:

"**Action**" means any claim, action, cause of action, demand, lawsuit, arbitration, inquiry, audit, notice of violation, proceeding, litigation, citation, summons, subpoena or investigation of any nature, civil, criminal, administrative, regulatory or otherwise, whether at law or in equity.

"**Affiliate**" of a Person means any other Person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person. The term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise.

"**Agreement**" has the meaning set forth in the preamble.

"**Ancillary Documents**" means the Assignment of Membership Interests, the Promissory Note, the Pledge Agreement, the Release and Indemnity Agreement, and any certificate or instrument contemplated by this Agreement.

"**Assignment of Membership Interests**" an assignment of the Membership Interests assigning Seller's membership interests in the Company to Buyer.

"**Business Day**" means any day except Saturday, Sunday or any other day on which commercial banks located in Dallas, Texas are authorized or required by Law to be closed for business.

"**Buyer**" has the meaning set forth in the preamble.

"**Closing**" has the meaning set forth in Section 2.04.

"**Closing Date**" means January 18, 2019.

"**Company**" has the meaning set forth in the recitals.

"**Dollars or $**" means the lawful currency of the United States.

"**Encumbrance**" means any lien, pledge, mortgage, deed of trust, security interest, charge, claim, easement, encroachment or other similar encumbrance.

"**Governmental Authority**" means any federal, state, local or foreign government or political subdivision thereof, or any agency or instrumentality of such government or political subdivision, or any self-regulated organization or other non-governmental regulatory authority or quasi-governmental authority (to the extent that the rules, regulations or orders of such organization or authority have the force of Law), or any arbitrator, court or tribunal of competent jurisdiction.

"**Governmental Order**" means any order, writ, judgment, injunction, decree, stipulation, determination or award entered by or with any Governmental Authority.

"**Initial Cash Payment**" means one million three hundred thousand dollars ($1,300,000).

"**Law**" means any statute, law, ordinance, regulation, rule, code, order, constitution, treaty, common law, judgment, decree, other requirement or rule of law of any Governmental Authority.

"**Membership Interests**" has the meaning set forth in the recitals.

"**Person**" means an individual, corporation, partnership, joint venture, limited liability company, Governmental Authority, unincorporated organization, trust, association, or other entity.

"**Post-Closing Tax Period**" means any taxable period beginning after the Closing Date and, with respect to any taxable period beginning before and ending after the Closing Date, the portion of such taxable period beginning after the Closing Date.

"**Post-Closing Taxes**" means Taxes of the Company for any Post-Closing Tax Period.

"**Pre-Closing Tax Period**" means any taxable period ending on or before the Closing Date and, with respect to any taxable period beginning before and ending after the Closing Date, the portion of such taxable period ending on and including the Closing Date.

"**Pre-Closing Taxes**" means Taxes of the Company for any Pre-Closing Tax Period.

"**Promissory Note**" means that certain Promissory Note dated as of the Closing Date and executed by Buyer for the benefit of Seller, in the amount of four million eight hundred fifty thousand dollars ($4,850,000).

"**Representative**" means, with respect to any Person, any and all managers, managing members, officers, employees, consultants, financial advisors, counsel, accountants and other agents of such Person.

"**Second Cash Payment**" means one million two hundred fifty thousand dollars ($1,250,000).

"**Seller**" has the meaning set forth in the preamble.

"**Straddle Period**" has the meaning set forth in Section 6.03.

"**Taxes**" means all federal, state, local, foreign and other income, gross receipts, sales, use, production, ad valorem, transfer, franchise, registration, profits, license, lease, service, service use, withholding, payroll, employment, unemployment, estimated, excise, severance, environmental, stamp, occupation, premium, property (real or personal), real property gains, windfall profits, customs, duties or other taxes, fees, assessments or charges of any kind whatsoever, together with any interest, additions or penalties with respect thereto and any interest in respect of such additions or penalties.

"**Tax Claim**" has the meaning set forth in Section 6.04.

"**Tax Return**" means any return, declaration, report, claim for refund, information return, or statement or other document relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

"**Third Cash Payment**" means one million two hundred fifty thousand dollars ($1,250,000).

"**Transaction Expenses**" means all fees and expenses incurred by the Company or Seller at or prior to the Closing in connection with the preparation, negotiation and execution of this

Agreement and the Ancillary Documents, and the performance and consummation of the transactions contemplated hereby and thereby.

## ARTICLE II
## PURCHASE AND SALE

**Section 2.01   Purchase and Sale.** Subject to the terms and conditions set forth herein, at the Closing, Seller shall sell to Buyer, and Buyer shall purchase from Seller, all of Seller's right, title, and interest in and to the Membership Interests, free and clear of all Encumbrances, for the consideration specified in Section 2.02.

**Section 2.02   Purchase Price.** The aggregate purchase price for the Membership Interests shall equal eight million, six hundred fifty thousand dollars ($8,650,000) (the **"Purchase Price"**).

**Section 2.03   Transactions to be Made Effective at Closing.**

(a)   Upon execution of this Agreement, Buyer shall deliver to Seller (i) the Initial Cash Payment by wire transfer of immediately available funds; and (ii) this Agreement, the Promissory Note, the Pledge Agreement, and the Release and Indemnity Agreement, each duly executed by Buyer.

(b)   Upon execution of this Agreement, Seller shall deliver to Buyer this Agreement, the Assignment of Membership Interests, the Pledge Agreement, and the Release and Indemnity Agreement, each duly executed by Seller.

**Section 2.04   Closing.** Subject to the terms and conditions of this Agreement, the closing of the purchase and sale of the Membership Interests contemplated hereby (the **"Closing"**) shall be effective as of the Closing Date.

**Section 2.05   Transactions to be Effected Following Closing.**

(a)   On or before June 21, 2019 (the **"Second Installment Date"**) Buyer shall deliver to Seller the Second Cash Payment, by wire transfer of immediately available funds; and

(b)   Within 120 days following the Second Installment Date, Buyer shall deliver to Seller the Third Cash Payment, by wire transfer of immediately available funds.

**Section 2.06   Early Repayment**.   If Buyer makes payment of both the Second Cash Payment and Third Cash Payment on or before the Second Installment Date, then Seller shall

accept an additional payment (as payment in full of the Purchase Price), if such additional payment is also made on or before the Second Installment Date in the amount of all outstanding principal and unpaid interest payable to Seller pursuant to the Promissory Note *less* $750,000.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Buyer that the statements contained in this ARTICLE III are true and correct as of the date hereof.

**Section 3.01    Organization and Authority of Seller.** Seller is a limited liability company duly organized, validly existing and in good standing under the Laws of the state of Texas. Seller has full limited liability company power and authority to enter into this Agreement and the Ancillary Documents to which Seller is a party, to carry out its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby. The execution and delivery by Seller of this Agreement and any Ancillary Document to which Seller is a party, the performance by Seller of its obligations hereunder and thereunder, and the consummation by Seller of the transactions contemplated hereby and thereby have been duly authorized by all requisite limited liability company action on the part of Seller. This Agreement has been duly executed and delivered by Seller, and (assuming due authorization, execution, and delivery by Buyer) this Agreement constitutes a legal, valid and binding obligation of Seller enforceable against Seller in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar Laws affecting creditors' rights generally and by general principles of equity (regardless of whether enforcement is sought in a proceeding at law or in equity).

**Section 3.02    Organization and Authority of the Company.** The Company is a limited liability company duly organized, validly existing and in good standing under the Laws of the state of Texas and has full limited liability company power and authority to own, operate or lease the properties and assets now owned, operated or leased by it.

**Section 3.03    Capitalization.** The Membership Interests constitute 100% of the issued and outstanding membership interests in the Company. The Membership Interests have been duly authorized and are validly issued, fully-paid and non-assessable.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Seller that the statements contained in this ARTICLE IV are true and correct as of the date hereof.

**Section 4.01   Organization and Authority of Buyer.** Buyer is a limited liability company duly organized, validly existing and in good standing under the Laws of the state of Texas. Buyer has full limited liability company power and authority to enter into this Agreement and the Ancillary Documents to which Buyer is a party, to carry out its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby. The execution and delivery by Buyer of this Agreement and any Ancillary Document to which Buyer is a party, the performance by Buyer of its obligations hereunder and thereunder and the consummation by Buyer of the transactions contemplated hereby and thereby have been duly authorized by all requisite limited liability company action on the part of Buyer. This Agreement has been duly executed and delivered by Buyer, and (assuming due authorization, execution, and delivery by Seller) this Agreement constitutes a legal, valid, and binding obligation of Buyer enforceable against Buyer in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar Laws affecting creditors' rights generally and by general principles of equity (regardless of whether enforcement is sought in a proceeding at law or in equity).

**Section 4.02   Investment Purpose.** Buyer is acquiring the Membership Interests solely for its own account for investment purposes and not with a view to, or for offer or sale in connection with, any distribution thereof. Buyer acknowledges that the Membership Interests are not registered under the Securities Act of 1933, as amended, or any state securities laws, and that the Membership Interests may not be transferred or sold except pursuant to the registration provisions of the Securities Act of 1933, as amended or pursuant to an applicable exemption therefrom and subject to state securities laws and regulations, as applicable.

**Section 4.03   Brokers.** No broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the transactions contemplated by this Agreement or any Ancillary Document based upon arrangements made by or on behalf of Buyer.

**Section 4.04   Legal Proceedings.** There are no Actions pending or, to Buyer's knowledge, threatened against or by Buyer or any Affiliate of Buyer that challenge or seek to prevent, enjoin or otherwise delay the transactions contemplated by this Agreement. No event has occurred or circumstances exist that may give rise or serve as a basis for any such Action.

## ARTICLE V
## COVENANTS

**Section 5.01   Confidentiality.** From and after the Closing, Buyer shall, and shall cause its Affiliates to, hold, and shall use its reasonable best efforts to cause its or their respective Representatives to hold, in confidence any and all information, whether written or oral, concerning the Company, except to the extent that Buyer can show that such information (a) is generally available to and known by the public through no fault of Buyer, any of its Affiliates or their respective Representatives; or (b) is lawfully acquired by Buyer, any of its Affiliates or their respective Representatives from and after the Closing from sources which are not

prohibited from disclosing such information by a legal, contractual or fiduciary obligation. If Buyer or any of its Affiliates or their respective Representatives are compelled to disclose any information by judicial or administrative process or by other requirements of Law, Buyer shall promptly notify Seller in writing and shall disclose only that portion of such information which Buyer is advised by its counsel in writing is legally required to be disclosed, *provided that* Buyer shall use reasonable best efforts to obtain an appropriate protective order or other reasonable assurance that confidential treatment will be accorded such information.

**Section 5.02   Public Announcements.** Unless otherwise required by applicable Law, no party to this Agreement shall make any public announcements in respect of this Agreement or the transactions contemplated hereby or otherwise communicate with any news media without the prior written consent of the other party (which consent shall not be unreasonably withheld or delayed), and the parties shall cooperate as to the timing and contents of any such announcement.

## ARTICLE VI
## TAX MATTERS

**Section 6.01   Tax Covenants.** Seller shall prepare, or cause to be prepared, all Tax Returns required to be filed by the Company after the Closing Date with respect to a Pre-Closing Tax Period or Straddle Period.  Buyer shall prepare, or cause to be prepared, all Tax Returns required to be filed by the Company after the Closing Date with respect to all time periods beginning after the Closing Date.

**Section 6.02   Tax Indemnification.** Seller shall indemnify the Buyer from and against all Taxes of the Company or relating to the business of the Company for all Pre-Closing Tax Periods. Buyer shall indemnify the Seller from and against all Taxes of the Company or relating to the business of the Company for all Post-Closing Tax Periods.

**Section 6.03   Straddle Period.** In the case of Taxes that are payable with respect to a taxable period that begins before and ends after the Closing Date (each such period, a "**Straddle Period**"), the portion of any such Taxes that are treated as Pre-Closing Taxes for purposes of this Agreement shall be:

(a)      in the case of Taxes (i) based upon, or related to, income, receipts, profits, wages, capital or net worth, (ii) imposed in connection with the sale, transfer or assignment of property, or (iii) required to be withheld, deemed equal to the amount which would be payable if the taxable year ended with the Closing Date; and

(b)      in the case of other Taxes, deemed to be the amount of such Taxes for the entire period multiplied by a fraction the numerator of which is the number of days in the period ending on the Closing Date and the denominator of which is the number of days in the entire period.

**Section 6.04 Contests.** Buyer agrees to give written notice to Seller of the receipt of any written notice by the Company, Buyer or any of Buyer's Affiliates which involves the assertion of any claim, or the commencement of any Action, in respect of which an indemnity may be sought by Buyer pursuant to this ARTICLE VI (a "**Tax Claim**"). Buyer shall obtain the prior written consent of Seller before entering into any settlement of a Tax Claim or ceasing to defend such Tax Claim. Seller shall be entitled to participate in the defense of such Tax Claim and to employ counsel of its choice for such purpose.

**Section 6.05 Cooperation and Exchange of Information.** Seller and Buyer shall provide each other with such cooperation and information as either of them reasonably may request of the other in filing any Tax Return pursuant to this ARTICLE VI or in connection with any audit or other proceeding in respect of Taxes of the Company. Such cooperation and information shall include providing copies of relevant Tax Returns or portions thereof, together with accompanying schedules, related work papers and documents relating to rulings or other determinations by tax authorities. Each of Seller and Buyer shall retain all Tax Returns, schedules and work papers, records and other documents in its possession relating to Tax matters of the Company for any taxable period beginning before the Closing Date until the expiration of the statute of limitations of the taxable periods to which such Tax Returns and other documents relate, without regard to extensions except to the extent notified by the other party in writing of such extensions for the respective Tax periods. Prior to transferring, destroying or discarding any Tax Returns, schedules and work papers, records and other documents in its possession relating to Tax matters of the Company for any taxable period beginning before the Closing Date, Seller or Buyer (as the case may be) shall provide the other party with reasonable written notice and offer the other party the opportunity to take custody of such materials.

**Section 6.06 Tax Treatment. Seller and Buyer agree that the transactions contemplated hereby will be treated for U.S. federal income Tax purposes and applicable state income Tax purposes as a taxable sale by Seller and a purchase by Buyer of the assets of the Company.**

**Section 6.07 Tax Allocation.** Seller and Buyer agree that the Purchase Price shall be allocated among the assets of the Company for U.S. federal and applicable state and local income tax purposes as shown on the allocation schedule (the "**Allocation Schedule**"). Seller shall prepare the Allocation Schedule and Buyer agrees to report the transaction for Tax purposes consistent with such Allocation Schedule and not to take any position contrary to the Allocation Schedule in any Tax Return or other correspondence with any taxing authority.

**Section 6.08 Survival.** Notwithstanding anything in this Agreement to the contrary, the provisions of this ARTICLE VI shall survive for the full period of all applicable statutes of limitations (giving effect to any waiver, mitigation or extension thereof) plus 60 days.

## ARTICLE VII
## SURVIVAL; LIMITATION OF LIABILITY

**Section 7.01   Survival.** Subject to the limitations and other provisions of this Agreement, the representations and warranties contained herein shall survive for a period of one (1) year after the Closing. All covenants and agreements of the parties contained herein shall survive the Closing for a period of one (1) year after the Closing unless otherwise explicitly specified therein.

**Section 7.02   Limitation of Liability.** IN NO EVENT SHALL ANY PARTY BE LIABLE TO THE OTHER FOR ANY PUNITIVE, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR INDIRECT DAMAGES, INCLUDING LOSS OF FUTURE REVENUE OR INCOME, LOSS OF BUSINESS REPUTATION OR OPPORTUNITY RELATING TO THE BREACH OR ALLEGED BREACH OF THIS AGREEMENT, OR DIMINUTION OF VALUE OR ANY DAMAGES BASED ON ANY TYPE OF MULTIPLE.

**Section 7.03   Due Diligence Investigation; No Reliance; No Other Representations.** Buyer and Seller acknowledge that the principal owners of Buyer have worked for the Company in managerial or executive offices since its inception and as such has had access to all of the Company's books and records, including tax, financial, and accounting records as Buyer has required in the conduct of its due diligence. Buyer has had the opportunity to ask questions and receive answers regarding the Company and its business. Buyer is relying on its own due diligence, experience and expertise, and that of any of its Representatives in engaging in the transactions contemplated by this Agreement. BUYER IS NOT RELYING ON AND HEREBY EXPRESSLY WAIVES ANY CLAIM WITH RESPECT TO ANY OTHER REPRESENTATIONS OR WARRANTIES REGARDING THE COMPANY OR ITS BUSINESS, INCLUDING ANY STATEMENTS THAT MAY HAVE BEEN MADE RELATING TO THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT BY ANY OTHER PERSON WHETHER ORALLY OR IN WRITING, OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS AGREEMENT. BUYER ACCEPTS THE MEMBERSHIP INTERESTS AS-IS, WHERE IS, WITH ALL FAULTS. BUYER EXPRESSLY WAIVES ANY CLAIM OF FRAUDULENT INDUCEMENT REGARDING THIS AGREEMENT AND THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT, THE PROMISSORY NOTE, AND THE OTHER DOCUMENTS SIGNED CONTEMPORANEOUSLY WITH THIS AGREEMENT.

## ARTICLE VIII
## MISCELLANEOUS

**Section 8.01   Expenses.** Except as otherwise expressly provided herein, all costs and expenses, including, without limitation, fees and disbursements of counsel, financial advisors and accountants, incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the party incurring such costs and expenses, whether or not the Closing shall have occurred.

**Section 8.02   Notices.** All notices, requests, consents, claims, demands, waivers and other communications hereunder shall be in writing and shall be deemed to have been given (a) when delivered by hand (with written confirmation of receipt); (b) when received by the

addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by facsimile or e-mail of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next Business Day if sent after normal business hours of the recipient or (d) on the [third/[NUMBER]] day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this Section 8.02):

If to Seller:

with a copy to (which shall not constitute notice):

Lindsey Healthcare Holdings LLC
Attn: David Lindsey
4201 Spring Valley, Suite 1500
Dallas, TX 75244

Platt Cheema Richmond PLLC
Attn: Bill Richmond
1201 N. Riverfront Blvd., Suite 150
Dallas, TX 75207

If to Buyer:

Family Care
11111 Richmond Ave
Houston, Texas 77082
Attn: Landon Jordan

**Section 8.03   Interpretation.** For purposes of this Agreement, (a) the words "include," "includes" and "including" shall be deemed to be followed by the words "without limitation"; (b) the word "or" is not exclusive; and (c) the words "herein," "hereof," "hereby," "hereto" and "hereunder" refer to this Agreement as a whole. Unless the context otherwise requires, references herein: (x) to Articles, Sections, and Exhibits mean the Articles and Sections of, and Exhibits attached to, this Agreement; (y) to an agreement, instrument or other document means such agreement, instrument or other document as amended, supplemented and modified from time to time to the extent permitted by the provisions thereof and (z) to a statute means such statute as amended from time to time and includes any successor legislation thereto and any regulations promulgated thereunder. This Agreement shall be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted. The Exhibits referred to herein shall be construed with, and as an integral part of, this Agreement to the same extent as if they were set forth verbatim herein.

**Section 8.04   Headings.** The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

**Section 8.05   Severability.** If any term or provision of this Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon such determination that any term or other provision is invalid, illegal or unenforceable, the parties hereto shall negotiate in good faith to modify this

Agreement so as to effect the original intent of the parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

**Section 8.06   Entire Agreement.** This Agreement and the Ancillary Documents constitute the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein and therein, and supersede all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter. In the event of any inconsistency between the statements in the body of this Agreement and those in the Ancillary Documents and the Exhibits, the statements in the body of this Agreement will control.

**Section 8.07   Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns. Neither party may assign its rights or obligations hereunder without the prior written consent of the other party, which consent shall not be unreasonably withheld or delayed. No assignment shall relieve the assigning party of any of its obligations hereunder.

**Section 8.08   No Third-party Beneficiaries.** This Agreement is for the sole benefit of the parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other Person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

**Section 8.09   Amendment and Modification; Waiver.** This Agreement may only be amended, modified, or supplemented by an agreement in writing signed by each party hereto. No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving. No waiver by any party shall operate or be construed as a waiver in respect of any failure, breach or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege.

**Section 8.10   Governing Law; Submission to Jurisdiction; Waiver of Jury Trial.**

(a)      This Agreement shall be governed by and construed in accordance with the internal laws of the State of Texas without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction).

(b)      ANY LEGAL SUIT, ACTION OR PROCEEDING ARISING OUT OF OR BASED UPON THIS AGREEMENT, THE ANCILLARY DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY MAY BE INSTITUTED IN THE FEDERAL COURTS OF THE UNITED STATES OF

AMERICA OR THE COURTS OF THE STATE OF TEXAS IN EACH CASE LOCATED IN THE CITY OF DALLAS AND IN DALLAS COUNTY, AND EACH PARTY IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF SUCH COURTS IN ANY SUCH SUIT, ACTION OR PROCEEDING. SERVICE OF PROCESS, SUMMONS, NOTICE OR OTHER DOCUMENT BY MAIL TO SUCH PARTY'S ADDRESS SET FORTH HEREIN SHALL BE EFFECTIVE SERVICE OF PROCESS FOR ANY SUIT, ACTION OR OTHER PROCEEDING BROUGHT IN ANY SUCH COURT. THE PARTIES IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY OBJECTION TO THE LAYING OF VENUE OF ANY SUIT, ACTION OR ANY PROCEEDING IN SUCH COURTS AND IRREVOCABLY WAIVE AND AGREE NOT TO PLEAD OR CLAIM IN ANY SUCH COURT THAT ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

(c)     EACH PARTY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY WHICH MAY ARISE UNDER THIS AGREEMENT, THE ASSIGNMENT, THE ANCILLARY DOCUMENTS IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES AND, THEREFORE, EACH SUCH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LEGAL ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE ASSIGNMENT, THE OTHER ANCILLARY DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY. EACH PARTY TO THIS AGREEMENT CERTIFIES AND ACKNOWLEDGES THAT (A) NO REPRESENTATIVE OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT SEEK TO ENFORCE THE FOREGOING WAIVER IN THE EVENT OF A LEGAL ACTION, (B) SUCH PARTY HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER, (C) SUCH PARTY MAKES THIS WAIVER VOLUNTARILY, AND (D) SUCH PARTY HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 8.10(c).

**Section 8.11   Specific Performance.** The parties agree that irreparable damage would occur if any provision of this Agreement were not performed in accordance with the terms hereof and that the parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled at law or in equity.

**Section 8.12   Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

**Section 8.13**   THE PARTIES ACKNOWLEDGE, STIPULATE, AND AGREE THAT THEY HAVE BEEN GIVEN FULL AND AMPLE TIME AND OPPORTUNITY TO REVIEW THIS ENTIRE AGREEMENT, CONSULT COUNSEL WITH REGARD THERETO AND UNDERSTAND THE FOREGOING PROVISIONS AND THAT SUCH PROVISIONS ARE REASONABLE AND ENFORCEABLE.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be effective as of the date first written above by their respective authorized representatives thereunto duly authorized.

LINDSEY HEALTHCARE HOLDINGS LLC

By: _____
       David Lindsey, Manager


RENDON MANAGEMENT GROUP LLC

By: _____
Name: Landon Jordan
Title: Sole Managing Member

# EXHIBIT B

## PROMISSORY NOTE

**$4,850,000.00**                                                                 January 18, 2019

1.      **Definitions**.  As used in this Note (as hereinafter defined), the following terms have the meanings indicated below:

"Borrower" means Rendon Management Group, LLC, a Texas limited liability company, with a mailing address c/o Family Care, 11111 Richmond Ave, Houston, Texas 77082 Attn: Landon Jordan.

"Business Day" means any day other than a Saturday, Sunday or any other day on which commercial banks in the State of Texas are authorized to be closed or are in fact closed.

"Effective Date" means **January 18, 2019**.

"Lender" means Lindsey Healthcare Holdings LLC, a Texas limited liability company, with an address of 4201 Spring Valley, Suite 1500, Dallas, Texas 75244.

"Interest Rate" means two and six tenths percent (2.6%) per annum.

"Maturity Date" means **February 28, 2021**.

"Maximum Rate" means, at the particular time in question, the maximum nonusurious rate of interest, if any, which, under applicable law, may then be charged on this Note.

"Note" means this Promissory Note, as such may be increased in amount, modified, amended, restated, replaced, supplemented, renewed and extended from time to time.

2..  For value received and subject to the terms of the Membership Interest Purchase Agreement and Pledge Agreement executed contemporaneously herewith, unconditionally hereby promises to pay to the order of Lender on or before the Maturity Date, at its address listed above or such other place as the holder of this Note may hereafter designate, the principal sum of **FOUR MILLION EIGHT HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($4,850,000.00)**, together with all unpaid accrued interest, accruing at the Interest Rate from the Effective Date, in lawful money of the United States of America.

3.      **Payments**.  Twenty-four (24) equal payments of principal and accrued interest in the amount of $202,083.34 shall be due and payable to Lender beginning March 31, 2019 and ending on the Maturity Date. The entire outstanding principal balance hereof and all unpaid accrued interest shall be finally due and payable on the Maturity Date, or such earlier date on which this Note matures, whether by acceleration or otherwise.

If any payment of principal or interest on this Note shall become due on a day which is not a Business Day, such payment shall be made on the next succeeding Business Day, with interest continuing to accrue on a *per diem* basis at the Interest Rate.  Borrower agrees that all payments of any obligation due hereunder shall be final, and if any such payment is recovered in any bankruptcy, insolvency or similar proceedings instituted by or against Borrower, all obligations due hereunder shall be automatically reinstated in respect of the obligation as to which payment is so recovered.

4.      **Prepayment**. Borrower may prepay this Note in full, but not in part, before the Maturity Date, whether by cash, a new loan, renewal, or otherwise, provided that Borrower pays the entire principal amount and the accrued interest under this Note. Borrower agrees that all loan fees and other prepaid charges, if applicable, are earned fully as of the date of the loan evidenced by this Note and shall not be subject to refund except as required by law.

5.      **Waiver**. Except as otherwise expressly provided herein, **BORROWER HEREBY WAIVES ALL NOTICES OF NONPAYMENT, DEMANDS FOR PAYMENT, PRESENTMENTS FOR PAYMENT, NOTICES OF INTENTION TO ACCELERATE MATURITY, NOTICES OF ACTUAL ACCELERATION OF MATURITY, GRACE, PROTESTS, NOTICES OF PROTEST, AND ANY OTHER DEMANDS OR NOTICES OF ANY KIND AS TO THIS NOTE**, diligence in collection hereof and in bringing suit hereon, and any notice of, or defense on account of, the extension of time of payments or change in the method of payments, and without further notice hereby consents to the release of any party primarily or secondarily liable hereon. Borrower agrees that Lender's acceptance of partial or delinquent payments, or failure of Lender to exercise any right or remedy contained herein or in any instrument given as security for the payment of this Note shall not be a waiver of any obligation of Borrower to Lender or constitute waiver of any similar default subsequently occurring. **BORROWER HEREBY WAIVES ANY CLAIM OF FRAUDULENT INDUCEMENT RELATED TO THIS NOTE AS AGAINST LENDER.**

6.      **Protective Provisions**. Borrower shall not change the nature of Borrower's business or make a material acquisition of another company or business assets from a third-party or make a material disposition of its assets or engage in a change of control transaction.

7.      **Event of Default**. The occurrence of any of the following shall constitute an "Event of Default" under this Note:

(a)      Borrower shall fail to pay any principal, interest, or any other payment required under the terms of this Note on the due date hereunder and such failure to pay continues for five (5) calendar days thereafter;

(b)      Borrower shall (i) apply for or consent to the appointment of a receiver, trustee, liquidator or custodian of itself or any part of its assets or property, (ii) make a general assignment for the benefit of its creditors, (iii) adopt a plan of liquidation or dissolution or otherwise resolve to be or be dissolved or liquidated, or (iv) commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to itself or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect or consent to any such relief or to the appointment of or taking possession of its property by any official in an involuntary case or other proceeding commenced against it;

(c)      Proceedings for the appointment of a receiver, trustee, liquidator or custodian of the Borrower or any part of its assets or property, or an involuntary case or other proceedings seeking liquidation, reorganization or other relief with respect to the Borrower or the debts thereof under any bankruptcy, insolvency or other similar law now or hereafter in effect shall be commenced and an order for relief entered or such proceeding shall not be dismissed or discharged within forty-five (45) days of commencement; or

(d)      Borrower shall fail to adhere to any terms, provisions, and/or covenants contained in this Note, the Membership Interest Purchase Agreement, the Pledge Agreement, or the Release and Indemnity Agreement, in each case, of even date herewith to which Borrower and Lender are party.

2

8.     **Remedies for an Event of Default**. If an Event of Default occurs, Lender shall have the following remedies:

(a)     declare the entire unpaid balance of principal and interest on this Note to be at once immediately due and payable;

(b)     pursue any of the other rights, remedies, and/or recourse available to the holder of this Note pursuant to any applicable laws or in equity;

(c)     pursue any remedies pursuant to the Pledge Agreement of even date herewith to which Borrower and Lender are party; or

(d)     pursue any combination of the foregoing.

All rights and remedies of Lender shall be cumulative and concurrent and may be pursued singularly, successively, or together, at the option and in the sole discretion of the holder of this Note and may be exercised as often as the occasion therefor shall arise. Neither the failure by the holder of this Note to exercise or pursue, nor the delay in exercising or pursuing, any right, remedy or recourse available to the holder of this Note upon the occurrence of an Event of Default, shall be construed as a waiver of such Event of Default or as a waiver of the right to exercise and/or pursue any such right, remedy or recourse at a later date or upon the occurrence of any subsequent Event of Default. If default is made in the prompt payment of this Note when due or declared due or upon the occurrence of any other Event of Default, the holder of this Note consults with an attorney regarding the enforcement of any of its rights under this Note, or if this Note is placed in the hands of an attorney for collection or if suit be brought to enforce this Note, Borrower promises to pay all costs thereof, including, without limitation, reasonable attorneys' fees. Such costs and attorneys' fees shall include, without limitation, costs and reasonable attorneys' fees incurred by Lender in any appellate proceedings or in any proceedings under any present or future federal bankruptcy act, state receivership law or probate.

9.     **Maximum Rate**. This Note is intended to be performed in accordance with, and only to the extent permitted by, all applicable usury laws. If any provision hereof or the application thereof to any person or circumstance shall, for any reason and to any extent, be invalid or unenforceable, neither the application of such provision to any other person or circumstance nor the remainder of the instrument in which such provision is contained shall be affected thereby and shall be enforced to the greatest extent permitted by law. It is expressly stipulated and agreed to be the intent of the holder hereof to at all times comply with the usury and other applicable laws now or hereafter governing the interest payable on the indebtedness evidenced by this Note. If the applicable law is ever revised, repealed or judicially interpreted so as to render usurious any amount called for under this Note, or contracted for, charged, taken, reserved or received with respect to the indebtedness evidenced by this Note, or if Lender's exercise of the option to accelerate the maturity of this Note, or if any prepayment by Borrower results in Borrower having paid any interest in excess of that permitted by law, then it is the express intent of Borrower and Lender that all excess amounts theretofore collected by Lender be credited on the principal balance of this Note (or, if this Note have been paid in full, refunded to Borrower), and the provisions of this Note immediately be deemed reformed and the amounts thereafter collectable hereunder and thereunder reduced, without the necessity of the execution of any new document, so as to comply with the then applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder or thereunder. All sums paid, or agreed to be paid, by Borrower for the use, forbearance, detention, taking, charging, receiving or reserving of the indebtedness of Borrower to Lender under this Note shall, to the maximum extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of such indebtedness until payment in full so that the rate or amount of interest on account of such indebtedness does not exceed the

3

usury ceiling from time to time in effect and applicable to such indebtedness for so long as such indebtedness is outstanding. To the extent federal law permits Lender to contract for, charge or receive a greater amount of interest, Lender will rely on federal law instead of the Texas Finance Code for the purpose of determining the Maximum Rate. Additionally, to the maximum extent permitted by applicable law now or hereafter in effect, Lender may, at its option and from time to time, implement any other method of computing the Maximum Rate under the Texas Finance Code, or under other applicable law, by giving notice, if required, to Borrower as provided by applicable law now or hereafter in effect. Notwithstanding anything to the contrary contained herein, it is not the intention of Lender to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration. In no event shall Chapter 346 of the Texas Finance Code (which regulates certain revolving loan accounts and revolving tri-party accounts) apply to this Note. To the extent that Chapter 303 of the Texas Finance Code, is applicable to this Note, the "weekly ceiling" specified in such Chapter 303 is the applicable ceiling; provided that, if any applicable law permits greater interest, the law permitting the greatest interest shall apply.

10.     **GOVERNING LAW AND VENUE**. THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS. BORROWER AGREES THAT THIS NOTE IS PERFORMABLE IN DALLAS COUNTY, TEXAS AND THAT SUCH COUNTY IS PROPER VENUE FOR ANY ACTION OR PROCEEDING INVOLVING THIS NOTE TO THE EXCLUSION OF ALL OTHER VENUES.

11.     **Miscellaneous**.

(a)     Notices or communications to be given under this Note shall be given to the respective parties in writing at the addresses set forth above.

(b)     Time is of the essence of this Note.

(c)     No provision of this Note may be waived, changed, modified or terminated orally, but only in writing pursuant to an instrument executed by the party against whom enforcement of any waiver, change, modification, termination or discharge is sought.

(d)     This Note and all the covenants, promises and agreements contained herein shall be binding upon Borrower and its successors, assigns, heirs and personal representatives, and shall inure to the benefit of Lender and its successors and assigns.

(e)     If this Note is lost or destroyed, Borrower shall immediately issue a replacement Note.

(f)     Borrower agrees not to remit to Lender any payment marked "payment in full," "without recourse" or similar language. If Borrower remits a payment which contains such language: (i) Borrower waives any legal impact of such language; and (ii) Lender may accept the payment without losing any of Lender's rights under this Note, and Borrower shall remain obligated to pay any further amounts owed or that may become owed to Lender.

*[Signature Appears on Following Page]*

4

EXECUTED AND DELIVERED to be effective as of the Effective Date.

**BORROWER:**

**RENDON MANAGEMENT, LLC,**
a Texas limited liability company

By: _____
Name: Landon Jordan
Its: Sole Managing Member

5

# <u>EXHIBIT C</u>

**David Lindsey**
**Detail of Potentially Voidable Transfers**
**October 2021**

| Date | Bank Account | Disbursement Type | Description | Amount |
|------|--------------|------|-------------|--------|
| 02/22/19 | Comerica x4886 | Wire | Wire # 102672 Bnf David And Libe Fed # 000560 9485001131 | $ 1,250,000.00 |
| 04/01/19 | Comerica x4886 | Wire | Wire # 101331 an David And Libe Fed # 000209 9485001057 | 202,083.34 |
| 05/01/19 | Comerica x4886 | Wire | Wire # 102395 Bnf David And Libe Fed # 000629 9485001353 | 202,083.34 |
| 05/31/19 | Comerica x4886 | Wire | Wire # 104735 Bnf David And Libe Fed # 000984 9485001614 | 202,083.34 |
| 07/16/19 | Comerica x4886 | Wire | Wire # 004549 Bnf David And Libe Fed # 000185 9485000958 | 100,000.00 |
| 08/15/19 | Comerica x4886 | Wire | Wire # 010452 Bnf David And Libe Fed # 000509 9485001107 | 100,000.00 |
| | | | **Total** | **$ 2,056,250.02** |